UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CAROLYN SMITH,

    Plaintiff,

v.                                  Case No.3:09-cv-1042-J-12MCR

THE PENSION COMMITTEE OF
JOHNSON & JOHNSON, d/b/a
REED GROUP,

    Defendant.

___

## ORDER

This cause is before the Court on Defendant's Motion for Final Judgment Based on Review of Administrative Record (Doc. 21), filed May 28, 2010. On June 15, 2010, Plaintiff filed a response in opposition (Doc. 24) to Defendant's motion. On August 11, 2010, the Court heard oral argument on the matter. On September 3, 2010, each party filed memoranda (Docs. 27 and 28) regarding the proposed final judgment in this case

Plaintiff seeks review of Defendant's termination of her long term disability ("LTD") benefits. The benefit plan[1] ("Plan") in this case is governed by the Employee Retirement Investment Security Act of 1964, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendant determined that Plaintiff was no longer eligible to receive LTD benefits under the Plan effective July 22, 2008, because she failed or refused to cooperate in a requested

___

[1] The Plan and Plan Details are found in the court record at Docs. 21-4 and 21-5, with sequentially numbered pages. Throughout this Order, the Court cites to them as "Plan at [page number]."

Independent Medical Examination ("IME"). R. at 00699-700 and 703.[2] Plaintiff seeks review and reversal of Defendant's decision.

The Court will first review the relevant Plan provisions and facts established in the administrative record, then analyze those facts under the appropriate standard of review. For the reasons set forth below, the Court finds that Defendant's decision to terminate Plaintiff's LTD benefits was not arbitrary and capricious and therefore is not due to be reversed.

## The Plan

To receive LTD benefits under the Plan, Plaintiff had to qualify as "Totally Disabled," defined as "the complete inability of the Participant, due to Sickness or Injury, to do **any job** for which the Participant is (or may reasonably become), with or without reasonable accommodation, qualified by training, education, or experience." Plan at 000005 (emphasis in original). Benefits are payable under the Plan provided "the Participant is cooperating with the Claims Service Organization's periodic evaluation of his/her medical condition, the Participant is under the ongoing care of an Approved Treatment Provider and is routinely adhering to an Approved Treatment Plan prescribed by that Provider ... and the Participant is cooperating with any procedure, evaluation, investigation or audit in connection with this Plan...." Plan at 000009. The responsibility of the Participant to provide continued medical evidence of disability, Defendant's right to conduct evaluations of a Participant's medical status at any time to determine continued eligibility to receive

---

[2] The administrative record under review is found in the court record at Docs. 21-6 through 21-19, with sequentially numbered pages. Throughout this Order, the Court cites to it at "R. at [page number]."

LTD benefits, the requirement that the Participant actively participate in and cooperate with periodic evaluation of his/her medical condition, and Defendant's right to terminate benefits for a Participant's failure to meet his/her obligations under the Plan, are clearly set forth and reiterated throughout the Plan. Plan at 000014, 000016, 000017-18, 000044, 000047, 000049, and 000056.

## Facts from Administrative Record

Plaintiff first began receiving LTD benefits under the Plan on February 1, 1996, based upon a diagnosis of Bipolar Affective Disorder, Depressed. R. 00005-6 and 8. In September 2000, her diagnoses included: Personality Disorders, Unspecified; Pathological Personality NOS; Personality Disorder NOS; Psychopathic: Constitutional State; Bipolar Disorders, Other and Unspecified; Bipolar II Disorder; and Manic Depressive Psychosis, Mixed Type. R. at 00008.

Plaintiff completed an IME, an Adult Psychiatric Evaluation, with Dr. Michael Pruitt on November 28, 2006, and he diagnosed Plaintiff with Depression, Major, Recurrent Episode Without Mention of Psychotic Behavior. R. 00008-9 and 00663-665. Dr. Pruitt's report notes that Plaintiff had only marginally improved after years of on-and-off psychiatric treatment, and opined that she was unlikely to improve in the near future and that her disability was most likely permanent. R. at 00663-665. Dr. Pruitt also noted that Plaintiff reported fear of psychotherapy because of a bad experience. R. at 00664. He found that she was unable to work due to memory and concentration impairment, low energy and motivation, irritability, social isolation and agitation. R. at 00665.

Plaintiff's treating physician, Dr. Robert E. Groble, provided Defendant with updated information about Plaintiff's condition by completing an Attending Physician Statement and

Mental Health Evaluation dated June 6, 2008. R. 00635-638. He listed her disabling diagnoses as: major depression, bipolar II disorder, personality disorder, and chronic pain. R. at 00020 and 00637. He also stated that Plaintiff was not complying with all treatment recommendations in that she was refusing psychotherapy because of negative past experiences. Id. Dr. Groble opined that Plaintiff was unable to return to work under any circumstances. R. at 00638.

The case manager who reviewed the information that Dr. Groble provided noted that Plaintiff had a poor prognosis for return to work or achieving any wellness without a change in treatment and that she should be evaluated with an IME for a full diagnosis and treatment plan. R. at 00020. Plaintiff was scheduled for another IME, a Neuropsychological Consultation, with Dr. Tannahill Glen, on July 10, 2008. Defendant sent Plaintiff a letter dated June 24, 2008, advising her that the IME had been scheduled and to "[p]lease be aware *your failure to attend, put forth reasonable effort or otherwise fully cooperate in this evaluation will result in the termination of your disability benefits* as well as any other benefit programs you may be eligible for through Johnson & Johnson." R. at 00632 (emphasis added).

Prior to that exam, on June 25, 2008, Plaintiff phoned Defendant and spoke with a case manager who noted Plaintiff was very angry about attending another IME and stated Defendant could not make her attend the exam or therapy. R. at 00021. The case manager referred her to the LTD Plan. Id. Plaintiff called Defendant again on June 30, 2008, and the case manager noted she was hostile, threatened not to attend the IME and said she absolutely would not attend psychotherapy. Id. On July 2, 2008, she phoned Defendant a third time and stated she had received the IME notification and would attend

the evaluation. Id. The case manager discussed with Plaintiff the need for psychotherapy that may be brought into her treatment as a result of the IME and noted that "[s]he [Plaintiff] will have no part of it." Id.

Dr. Glen performed Plaintiff's neuropsychological evaluation on July 10, 2008. R. at 00625. Dr. Glen noted it was Plaintiff's first such evaluation but that she had undergone a comprehensive psychological evaluation with a Dr. Reynolds in 2004, who documented intentionally poor effort and concluded she was unable to work due to behavioral and interaction style rather than any cognitive or major psychiatric issues. R. at 00625. Dr. Glen reviewed extensive records and gathered information from Plaintiff herself. Id. Dr. Glen noted that Plaintiff reported losing custody of her children because her ex-husband used her psychiatric records against her. Id. Dr. Glen's behavioral observations included that Plaintiff had "a fairly dramatic presentation," "worked extremely slow in testing," "was fairly oppositional in testing," and exhibited "highly unusual test-taking behavior." R. at 00626. Dr. Glen states in her report that "[t]hese behaviors did not appear to reflect cognitive impairment or medication effects."

Dr. Glen explained Plaintiff's test results and her impressions:

> in neuropsychological testing, Mrs. Smith put forth suboptimal effort, so scores on tests completed today are invalid and should not be considered an accurate representation of her actual cognitive abilities. Three separate measures of symptom validity were presented. Mrs. Smith failed two of those outright, and her performance on the third was highly unusual and suggestive of suboptimal effort, or intentional exaggeration of cognitive symptoms. This is similar to Mrs. Smith's performance in Dr. Reynold's 2004 evaluation, in which effort was minimal.
> In short, she performed extremely poorly on the rest of tests presented to her as well. I should note that these extremely impaired scores were in great contrast to observations and report of current functioning. Also, the quality of her test taking behavior was highly unusual and much more impaired than seen in even patients with severe brain injury.

R. at 00626. Dr. Glen went on to state:

> Mrs. Smith did not exhibit evidence of bipolar disorder, although she probably has had dysthymic mood for many years. This would not be unexpected with history of personality disorder; she demonstrates symptoms of a mixed personality disorder with borderline and narcissistic features. There is no evidence of cognitive impairment based on observations. I cannot rely on test results, however, as Mrs. Smith put forth suboptimal effort that was suggestive of intentional symptom magnification, invalidating results.
>
> I should add that certainly there are cases in which patients have severe psychiatric distress, who (A) perform poorly in neuropsychological testing and (B) fail symptom validity testing as a result. It is my opinion that this is not the case with Mrs. Smith, and that symptom validity test performance reflects intentionally poor effort. There is the added issue of litigation in a personal injury case. Where there are factors such as litigation, discrepancies between a patient's claimed distress and objective findings, external incentive such as remaining away from work, and presence of Personality Disorder, malingering should be suspected. I do suspect malingering in this case, but will wait until the MMPI 2 [test] results are available before making that final diagnostic consideration.

R. at 00627. Dr. Glen noted that Plaintiff exhibited emotional dyscontrol, but could compose herself when necessary, and that her presentation during the evaluation was suggestive of exaggeration or symptom magnification. Id.

Dr. Glen further reported:

> Mrs. Smith exhibited impaired-range scores in testing, which in some cases might represent cognitive impairment. However, validity testing indicated intentionally suboptimal performance and poor effort, so test scores were invalid measures of actual cognitive ability. No cognitive impairment was noted by observation.
>
> No reality testing impairment was noted nor was there evidence of formal thought disorder. The MMPI 2 [test results] should provide further information as to evidence of symptom magnification of psychiatric complaints.
>
> Emotional lability/anxiety was actually less intrusive than Mrs. Smith's tendency to withhold responses, respond in an oppositional manner, and provide vague information, which are all behavioral rather than psychiatric in nature. Thus, there was behavioral impairment notable in testing and

interview, but behavior seemed to reflect personality style and oppositional interactions rather than any underlying psychiatric dysfunction.

Id. Dr. Glen concluded:

> ...I do not think Mrs. Smith can maintain an 8 hour job, but not due to any underlying psychiatric dysfunction such as severe depression or uncontrolled mood disorder. Her challenges appear to be more characterological and psychosocial in nature. Thus, technically and cognitively, I think she is able to be employed. However, I think she would be an unpredictable and unsatisfactory employee based on medical records and today's observations. Unfortunately, she has been in treatment for many years, with very poor results, so prognosis for improvement is poor. Her current treatment regimen appears to be perfectly adequate and appropriate for her challenges.

Id.

After receiving the MMPI 2 test results, Dr. Glen wrote on July 22, 2008, advising Defendant:

> Not surprisingly, Mrs. Smith's test profile was invalid due to a pervasive style of responding in a manner that [indicates] exaggeration or magnification of symptomology. She also selectively omitted enough items on the test to warrant caution in test interpretation. I should add that her response profile was remarkably dramatic, in the sense that I very rarely see this level of unlikely responses. Her response pattern was also not likely to be due to psychopathology or an emotional 'cry for help.' I think it is more likely due to malingering.

R. at 00629.

By letter dated July 23, 2008, Plaintiff was advised of Defendant's decision to terminate her LTD benefits based on her failure to cooperate or put forth her best effort during the IME with Dr. Glen. R. at 00622. Plaintiff appealed that decision and submitted a letter dated September 8, 2008, from her treating physician Dr. Groble in response to the findings and conclusions of Dr. Glen. R. at 00065-67.

7

Dr. Groble's letter primarily takes issue with Dr. Glen's diagnoses and her conclusion that Plaintiff could resume employment. Id. Commenting on what he characterizes as Dr. Glen's emphasis on Plaintiff's "diminished energy, concentration and slowed test performance with reported exaggeration of mental symptoms," he states:

> This patient has become emotionally distrustful and traumatized by past professional contacts including a social worker divulging "confidential" information leading to the loss of custody of her children. The patient has been afraid, as a result, to even be in any further counseling that might have improved her adjustment emotionally and potentially allowed rehabilitation.

Id. at 00066.

By letter dated October 17, 2008, Defendant informed Plaintiff that her appeal had been denied and the decision to terminate her LTD benefits upheld due to her suboptimal effort at the July 10, 2008, IME with Dr. Glen. R. at 00049. She was advised that her claim had been sent for a physician file review to determine if medical documentation supported cognitive defects which would have impaired her ability to complete testing, and that the reviewing physician, Dr. Marie-Claude Rigaud, determined that based on the objective medical findings, Plaintiff did not have a cognitive impairment which would adversely affect her ability to complete psychological or neuropsychological testing. Id. and R. at 00057-62. Dr. Rigaud noted that Plaintiff's functional impairments reported by Dr. Groble in June of 2008 were not supported by objective findings of a mental status and functional evaluation and also concurred with Dr. Glen that Plaintiff was able to work less than 8 hours a day. R. at 00061.

Plaintiff's second appeal was denied by Defendant by letter dated June 11, 2009. R. at 00699-704. Defendant advised Plaintiff that it had considered her entire file, including her two submissions on appeal: the September 8, 2008, letter from Dr. Groble, and the

results of an orthopedic IME conducted by Dr. John Kihm on January 26, 2009. R. at 00702. Defendant's letter noted that Dr. Groble's letter was not accompanied by any objective documentation to support his statement, and that Dr. Kihm had not opined as to Plaintiff's functional capacity for work. Id. Nor does his report address the issue of her ability to cooperate in an IME. Defendant therefore upheld its decision to terminate Plaintiff's LTD benefits effective July 22, 2008.[3] This suit followed.

## Standard of Review and Analysis

At the hearing, the parties stipulated that the Court's review in this case is limited to the administrative record. Because the Plan at issue gives the Plan administrator discretionary authority to determine eligibility for benefits and construe the terms of the Plan, the standard of review in this case is abuse of discretion, that is, the Court may not reverse Defendant's decision to terminate Plaintiff's LTD benefits unless it finds that the decision was arbitrary and capricious. See Jett v. Blue Cross & Blue Shield, 890 F.2d 1137, 1139 (11th Cir. 1989). Under this standard, "the function of the court is to determine whether there was a reasonable basis for the decision, based on the facts known to the [plan] administrator at the time the decision was made." Id.

A benefit plan administrator, such as Defendant, may not "arbitrarily refuse to credit

---

[3] Defendant also advised Plaintiff that the decision to terminate her benefits would have been the same based upon the record and the opinions of Drs. Glen and Rigaud that she was capable of working less than 8 hours a day, and as a result, she no longer met the Plan's definition of Totally Disabled. R. at 00703. Defendant also argues that Plaintiff's benefits were terminable because she failed to advise Defendant of personal injury litigation she brought and of her receipt of Social Security benefits, as required under the Plan. The Court finds no need to address these issues and reviews only the reasonableness of Defendant's decision to terminate Plaintiff's LTD benefits on the basis it specified, that is, for her failure to cooperate in the IME with Dr. Glen.

a claimant's reliable evidence, including opinions of a treating physician." <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003). Denial of a benefit claim based on conflicting but reliable evidence is permissible, but relevant evidence may not be ignored to reach a desired conclusion. <u>Oliver v. Coca Cola Co.</u>, 497 F.3d 1181, 1199 (11th Cir. 2007).

In <u>Doyle v. Liberty Life Assur. Co. of Boston</u>, 542 F.3d 1352, 1360 (11th Cir. 2008), the Eleventh Circuit found that <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105 (2008),overruled its precedent requiring the application of the heightened arbitrary and capricious standard in cases involving a conflict of interest. Whether the determination of benefits is made under a conflict of interest is now one factor in the Court's arbitrary and capricious analysis, for which the claimant bears the burden of proof. 542 F.3d at 1360. Accordingly, the Eleventh Circuit's previously well-defined series of six steps in reviewing a termination of ERISA benefits set forth in <u>Williams v. Bellsouth Telecomms., Inc.</u>, 373 F.3d 1132, 1137-38 (11th Cir. 2004) were changed only as to the sixth step, which the Court now must apply as follows:

> 1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, end the inquiry and affirm the decision;
> 2) If the administrator's decision in fact is "de novo wrong," then determine whether the claims administrator was vested with discretion in reviewing claims; if not, then end the judicial inquiry and reverse the decision;
> 3) If the administrator's decision is "de novo wrong" and the claims administrator *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it;
> 4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if the claims administrator operated under a conflict of interest;
> 5) If there is no conflict, then end the inquiry and affirm the decision;

> 6) If there is a conflict of interest, then apply **ordinary** arbitrary and capricious review to it in light of all aspects of the decision to affirm or deny it.

Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1195-96 (11th Cir. 2010); Herman v. Metropolitan Life Ins. Co., 689 F.Supp. 2d 1316, 1324-25 (M.D.Fla. 2010)(noting that Glenn modified the Eleventh Circuit's six-step review in ERISA cases).

This difficult case involves termination of LTD benefits that Plaintiff had been receiving for some 12 years on the basis of a well-documented medical history of psychological and emotional impairments that Defendant had accepted as establishing that she was Totally Disabled, that is completely unable to perform any job. In addition, less than two years before terminating her benefits, Defendant continued her benefits on the basis of Dr. Pruitt's IME, which concluded that her disability was likely permanent. The Court is of the opinion that such factual background presents a question of fact as to whether Defendant's decision was not wrong. Nevertheless, the Court must uphold the decision if there is some reasonable basis for it and now proceeds to evaluate it under the arbitrary and capricious standard because it is undisputed that Defendant was vested with discretion in reviewing claims.

In this case, the Court cannot find that Defendant either arbitrarily refused to credit or ignored any evidence provided by Plaintiff. It is apparent from the record that both Drs. Glen and Rigaud, as well as Defendant, considered all the medical documentation provided, including that submitted by Dr. Groble, and that Dr. Rigaud and Defendant considered his September 8, 2008, letter critiquing Dr. Glen's conclusions.

The Court cannot find that it was unreasonable for Defendant to conclude that

Dr. Groble's letter and other medical evidence did not establish that Plaintiff was incapable of actively participating and cooperating in the IME with Dr. Glen. Dr. Groble's letter primarily takes issue with Dr. Glen's diagnoses and conclusion that Plaintiff is capable of working less than 8 hours a day. He does not attempt to advocate that Plaintiff's test results are valid or in any way reflect her actual abilities, and gives as the sole reason for her poor effort, her fear of psychiatric counseling because of a negative past experience. Some twenty months earlier, despite that fear, she had been able to complete an IME with Dr. Pruitt. Plaintiff also had been advised verbally and in writing that the provisions of the Plan required her to participate in the testing or risk loss of her benefits. It is clear that Plaintiff had refused to and did not want to participate in recommended psychological counseling as part of her treatment plan because of her negative past experience. Nevertheless, to be eligible to continue to receive LTD benefits under the Plan, Plaintiff's remained obliged both to comply with recommended treatment that might assist her in returning to work at some point and to cooperate in evaluations when requested by Defendant. While the Court may find that the decision to terminate the LTD benefits of a woman who had been receiving them for some 12 years, and obviously had numerous physical, psychological, and emotional issues, on the basis of her failure to cooperate in one IME exam was harsh, it was within Defendant's rights under the Plan, did not ignore relevant information provided by Plaintiff, and was based upon reasons supported by evidence in the record.

Plaintiff argues that Defendant's decision to terminate her LTD benefits should be reviewed under the heightened arbitrary and capricious standard. As discussed above, the Eleventh Circuit has held that the U.S. Supreme Court's decision in <u>Glenn</u> has

eliminated such standard of review, requires the claimant to establish the existence of a conflict of interest, and requires the Court to consider any conflict as a factor in its review for abuse of discretion.

Plaintiff does not assert that Defendant had a traditional financial conflict of interest, but instead argues that the procedures it followed, particularly requiring Plaintiff to submit to two IME's within approximately 18 months, were so unreasonable as to demonstrate a conflict that should require a less deferential standard of review of its decision. In accordance with <u>Glenn</u>, the Court considers the alleged conflict of interest as a factor in determining whether the decision to terminate her LTD benefits was arbitrary and capricious.

The Court cannot find that it was procedurally unreasonable for Defendant to ask Plaintiff to submit to the IME with Dr. Glen. The Plan requires her to allow Defendant to evaluate her condition at any time. Defendant's request that she have the IME was triggered by information provided by her treating physician, Dr. Groble, that she was not complying with her treatment plan, as required to maintain her benefits under the Plan, by refusing to receive recommended psychotherapy.

For the reasons set forth above, the Court finds that Plaintiff has not established that Defendant's decision to terminate her LTD benefits effective July 22, 2008, was arbitrary and capricious and therefore is due to be upheld. Upon review of the matter, it is

**ORDERED AND ADJUDGED:**

1.    That Defendant's Motion for Final Judgment Based on Review of Administrative Record (Doc. 21) is granted; and

13

2. That the Clerk is hereby directed to enter judgment in favor of Defendant and against Plaintiff, and to close the case.

**DONE AND ORDERED** this ____28th____ day of October 2010.

*Howell W. Melton*
**SENIOR UNITED STATES DISTRICT JUDGE**

c: Counsel of Record